1  KEVIN W. ROBERTS, WSBA #24973
   JASON T. PISKEL, WSBA #35398
2  DUNN & BLACK, P.S.
   111 N. Post, Ste. 300
3  Spokane, WA 99201-0907
4  Telephone: (509) 455-8711
   Facsimile: (509) 455-8734
5  Attorneys for Plaintiff

6

7

8             IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF EASTERN WASHINGTON
9

10  PACIFIC COAST TRAILER, LLC,        )    NO. CV-10-111-RHW
                                       )
11                Plaintiff,           )    STIPULATION RE:
                                       )    PLAINTIFF'S TEMPORARY
12       vs.                           )    RESTRAINING ORDER
                                       )
13  COZAD TRAILER SALES, LLC, a        )
14  limited liability company, TOM     )
    PISTACCHIO and DELORES             )
15  PISTACCHIO, and their marital      )
16  community,                         )
                                       )
17                Defendant.           )
                                       )
18

19       Plaintiff, by and through its counsel, Kevin W. Roberts and Jason T. Piskel of

20  Dunn & Black, P.S., and Defendants, by and through their counsel, Brian H.

21  Kirkorian, hereby stipulate that the Temporary Restraining Order entered by the

22  Superior Court of the State of Washington, County of Spokane.

23

24

25

STIPULATION RE: PLAINTIFF                    **Dunn & Black**
TEMPORARY RESTRAINING                        A Professional Service Corp.
ORDER - 1                                    111 North Post, Suite 300
                                             Spokane, WA 99201
                                             VOICE: (509) 455-8711 • FAX: (509) 455-8734

EXHIBIT
4

- 83 -

On March 16, 2010, a Summons and Complaint for Damages, Declaratory Judgment and Injunctive Relief was filed by the Plaintiff against the Defendants in Spokane County Superior Court under Cause No. 10-2-01059-3.

On March 17, 2010, Defendants Tom Pistacchio and Cozad Trailer Sales, LLC were served with the Summons and Complaint for Cause No. 10-2-01059-3.

On March 19, 2010, the Spokane Superior Court entered a Temporary Restraining Order ("TRO"), attached hereto as **Exhibit A,** preventing the Defendants from using the Reliance name.

On April 14, 2010, Defendants filed a Notice of Removal of Civil Action Pursuant to 28 U.S.C. 1441(A) and 1441(B) in United States District Court Eastern District of Washington.

To accommodate the parties schedule with regard to the Preliminary Injunction hearing, the parties agree to extend the TRO entered by the Spokane Superior Court until June 20, 2010.  Nothing in this stipulation shall waive any parties' procedural, statutory, or common law rights, challenges, remedies, or defenses relating to jurisdiction, removal, or venue.

\\\

\\\

\\\

STIPULATION RE:  PLAINTIFF'S
TEMPORARY RESTRAINING
ORDER - 2

Dunn & Black
A Professional Service Corp.

111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

DATED this 22 day of April, 2010.

KEVIN W. ROBERTS, WSBA #24973
JASON T. PISKEL, WSBA #35398
Dunn & Black, PS
111 North Post, Ste. 300
Spokane, WA 99201
Telephone:  (509) 455-8711
Fax:     (509) 455-8734
kroberts@dunnandblack.com
jpiskel@dunnandblack.com
Attorneys for Plaintiff


BRIAN H. KRIKORIAN, WSBA #27861
Law Office of Brian H. Krikorian
2110 N. Pacific Street, Suite 100
Seattle, WA 98103
Telephone: (206) 547-1942
Fax: (425) 732-0115
bhkrik@bhklaw.com
Attorney for the Defendants

STIPULATION RE:  PLAINTIFF'S
TEMPORARY RESTRAINING
ORDER - 3

Dunn & Black
A Professional Service Corp.

111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

1

CERTIFICATE OF SERVICE

2      I HEREBY CERTIFY that on the 23rd day of April, 2010, I electronically filed

3    the foregoing document with the Clerk of the Court using the CM/EFC system.  The

4    CM/ECF system will send notification of such filings to the following:

5    • Brian H. Krikorian
        bhkrik@bhklaw.com

6

7                                    s/ Jason T. Piskel
                                     JASON T. PISKEL, WSBA #35398
8                                    Dunn & Black, PS
                                     111 North Post, Ste. 300
9                                    Spokane, WA 99201
                                     Telephone:  (509) 455-8711
10                                   Fax:   (509) 455-8734
                                     jpiskel@dunnandblack.com
11                                   Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STIPULATION RE:  PLAINTIFF'S
TEMPORARY RESTRAINING
ORDER - 4

COPY
ORIGINAL FILED

MAR 1 9 2010

THOMAS R. FALLQUIST
SPOKANE COUNTY CLERK

SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF SPOKANE

PACIFIC COAST TRAILERS, LLC,      )    NO. 10-201059-3

      Plaintiff,      )    **ORDER GRANTING PLAINTIFF'S**
                   )    **MOTION FOR TEMPORARY**

vs.                    )    **RESTRAINING ORDER**

COZAD TRAILER SALES, LLC, a    )
limited liability company, TOM    )
PISTACCHIO and DELORES       )
PISTACCHIO, and their marital    )
community,                 )

      Defendants.       )
                   )

This matter came before the Court on March 19, 2010, on Pacific Coast Trailers,

LLC's Motion for Temporary Restraining Order against Defendants. Notice of the Motion

was served upon Tom Pistacchio, personally, and as registered agent of Cozad Trailer Sales,

LLC on March 18, 2010.

The Court heard oral argument of counsel for Pacific Coast Trailers, LLC. The

Court considered the pleadings filed in this action and the following:

    1.      Plaintiff's Motion for Temporary Restraining Order;

ORDER GRANTING MOT[...]
TEMPORARY RESTRAIN[...]



Dunn & Black
A Professional Service Corp.

Banner Bank Building
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

cc: client 3/19/10

87
31

2.     Plaintiff's Memorandum in Support of Motion for Temporary Restraining
Order; and,

3.     The Declaration of Joe Mayo.

Based on the argument of counsel and the evidence present, the Court finds:

1.     Reliance Trailer Manufacturing Corporation has two registered Trademarks
for the "Reliance" name.

2.     Pacific Coast Trailers is a limited liability company that has licensed the
"Reliance" Trademark from Reliance Trailer Manufacturing Corporation.

3.     Defendants have indicated they intend to use the "Reliance" name to compete
in the same industry as Pacific Coast Trailers.

4.     This will cause irreparable harm to Pacific Coast Trailers.

For the reasons set forth in the above Findings of Fact and Conclusions of Law, it is
hereby ORDERED:

1.     That Pacific Coast Trailers, LLC's Motion for Temporary Restraining Order
is GRANTED.

2.     Defendants shall not use the "Reliance" name.

3.     Pacific Coast Trailers shall file a bond with the Court in the amount of
$1,000.

4. This Order expires after 14 days from its entry.

ORDER GRANTING MOTION FOR
TEMPORARY RESTRAINING ORDER - 2

Dunn & Black
A Professional Service Corp.

Banner Bank Building
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711  •  FAX: (509) 455-8734

1    DONE IN OPEN COURT this ___ day of March, 2010.

2

3

4                     JUDGE/COMMISSIONER

5

6    Presented by:

7    DUNN & BLACK, P.S.

8

9    KEVIN W. ROBERTS, WSBA #29473

10   JASON T. PISKEL, WSBA #35398

11   Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION FOR
TEMPORARY RESTRAINING ORDER - 3

Dunn & Black
A Professional Service Corp.

Banner Bank Building
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

- 89 -

1  KEVIN W. ROBERTS, WSBA #24973
   JASON T. PISKEL, WSBA #35398
2  DUNN & BLACK, P.S.
   111 N. Post, Ste. 300
3  Spokane, WA 99201-0907
   Telephone:  (509) 455-8711
4  Facsimile:  (509) 455-8734
5  Attorneys for Plaintiff

6

7

8          IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF EASTERN WASHINGTON
9

10  PACIFIC COAST TRAILER, LLC,        )    NO. CV-10-111-RHW
                                       )
11              Plaintiff,             )    **ORDER RE: PLAINTIFF'S**
                                       )    **TEMPORARY RESTRAINING**
12      .vs.                           )    **ORDER**
                                       )
13  COZAD TRAILER SALES, LLC, a        )
14  limited liability company, TOM     )
    PISTACCHIO and DELORES             )
15  PISTACCHIO, and their marital      )
16  community,                         )
                                       )
17              Defendant.             )
                                       )
18

19      This matter having come before the above Court upon the Stipulation of the

20  Plaintiff and Defendants, and the Court having considered the matter, now, therefore,

21      IT IS HEREBY ORDERED that the Temporary Restraining Order entered by

22
    the Spokane Superior Court on March 19, 2010 shall remain in effect until June 20,
23
    2010.
24

25

ORDER - 1                                    Dunn & Black
                                          A Professional Service Corp.

                                         111 North Post, Suite 300
                                           Spokane, WA 99201
                                 VOICE: (509) 455-8711 • FAX: (509) 455-8734

- 90 -
34

DONE IN OPEN COURT this _____ day of _____, 2010.

1

2

3

_____
4
THE HONORABLE ROBERT H. WHALEY

5

6 Presented by:

7 DUNN & BLACK, P.S.

8

9 _____

10 KEVIN W. ROBERTS, WSBA #24973
JASON T. PISKEL, WSBA #35398

11

12 Approved as to Form;
13 Notice of Presentation Waived:

14 THE LAW OFFICES OF BRIAN KRIKORIAN

15

16 _____
BRIAN H. KRIKORIAN, WSBA #27861
17 Attorney for Defendants

18

19

20

21

22

23

24

25

--

ORDER - 2

Dunn & Black
A Professional Service Corp.

111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Case 2:10-cv-00111-EFS    Document 25-2    Filed 07/26/10

Case 2:10-cv-00111-EFS    Document 13-1    Filed 06/04/10
Case 1:10-cv-00668-AWI-GSA    Document 38    Filed 06/01/2010    Page 1 of 37

1   WESLEY D. MORTENSEN
    DUNN & BLACK, P.S.
2   111 North Post Street, Ste. 300
    Spokane, Washington  99201
3   Telephone:  (509) 455-8711

4
    Attorneys for Defendants Pacific Coast
5   Trailers, LLC and Joseph Mayo

6

7

8               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA
9                     FRESNO DIVISION

10
    COZAD TRAILER SALES, LLC,              )
11                                         )   NO. CV-10-00668-AWI
            Plaintiff,                     )
12                                         )
        v.                                 )   SUPPLEMENTAL
13                                         )   DECLARATION OF JOSEPH
    PACIFIC COAST TRAILERS, LLC, a         )   MAYO IN SUPPORT OF
14  Washington limited liability company; )   MOTION TO DISMISS
    RELIANCE TRAILER                       )
15  MANUFACTURING, a California            )   Date:  Monday, June 7, 2010
    corporation; RELIANCE TRAILER          )   Time:  1:30 p.m.
16  CO., LLC, a Washington limited         )
17  liability company; REDWOOD             )   The Honorable Anthony W. Ishii
    RELIANCE SALES COMPANY, a              )
18  California corporation; BRIAN LING,    )
    an individual, DONALD K. LING, an      )
19  individual, and JOSEPH MAYO, an        )
20  individual,                            )
                                           )
21                                         )
            Defendants.                    )
22                                         )

23      I, JOSEPH MAYO, make this declaration under penalty of perjury under

24  the laws of the State of Washington:

25

DECLARATION OF JOSEPH MAYO
IN SUPPORT OF MOTION ... - 1

Dunn & Black
A Professional Service Corp.

111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

EXHIBIT

5

36

1.     I am one of the owners of Pacific Coast Trailers, LLC.  I am over the age of 18, have personal knowledge of and am competent to testify with regard to the matters contained herein.

2.     I am one of the owners of Pacific Coast Trailers, LLC.  I am over the age of 18, have personal knowledge of and am competent to testify with regard to the matters contained herein.

3.     I have reviewed the Declaration of Tom G. Pistacchio In Opposition To Pacific Coast Trailers And Mayo's Motion To Dismiss.  That Declaration contains several representations that are factually wrong and could not be based on personal knowledge of Mr. Pistacchio.  Several of the assertions made by Mr. Pistacchio which are based solely on "information and believe" are addressed in this Declaration.

4.     Pacific Coast Trailers and has not marketed, manufactured or sold trailers in California.  Indeed, Pacific Coast Trailers has not conducted any business in the State of California.  Pacific Coast Trailers has not competed with Cozad Trailers in California or any other jurisdiction.  Our current business does not include any of the same "product lines" as Cozad.

DECLARATION OF JOSEPH MAYO
IN SUPPORT OF MOTION ... - 2

Dunn & Black
A Professional Service Corp.

111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

5.    I am not, nor have I ever been, a "principal" of Reliance Trailer Mfg. Nor have I ever been a shareholder, director, officer, or employee of Reliance Trailer Mfg.

6.    Reliance Trailer Mfg. assigned certain trademarks to Reliance Trailer, LLC. These included "STURDYWELD"; "ALLOY"; and "COMET". Prior to licensing the "RELIANCE" trademark, I searched and determined that Reliance Trailer Mfg. owned the trademark and had not assigned it to anyone else. Reliance Trailer Mfg did not transfer ownership and/or title to the "RELIANCE" trademark and I am unaware of any facts or documentation that supports Mr. Pistacchio's "belief" otherwise.

7.    I am unaware of and have not been able to locate any facts or documentation indicating that Reliance Trailer Co., LLC actually obtained ownership or title or any other rights to the "RELIANCE" Trademark.

8.    Pacific Coast Trailer's license for the "RELIANCE" Trademark was negotiated, drafted and will be performed in the State of Washington. At the time the licensing agreement was entered into, I did not know the terms of the purchase agreement between Cozad and Sterling. I did not know the extent of what personal property Cozad purchased, what, if any, representations Sterling Savings, a

DECLARATION OF JOSEPH MAYO
IN SUPPORT OF MOTION ... - 3

Washington bank, had made to Cozad or what Cozad believed it had bought from Sterling Savings.

9.    The "RELIANCE" Trademark is and was owned by Reliance Trailer Mfg.  As a result, the fact Pacific Coast Trailer acquired a license to use that trademark in no way "prevented Cozad from acquiring" ownership of the Trademark. The only thing that prevented Cozad from acquiring the "RELIANCE" Trademark is the fact it apparently attempted to purchase it from Sterling Savings in Washington and it turned out that Sterling Savings did not own the Trademark.

10.    At the present time, Pacific Coast Trailers has not used the "RELIANCE" Trademark in any way, specifically including use in California or in "interstate commerce".

11.    Pacific Coast Trailers did not enter into the licensing agreement in Washington with any intent other than to obtain the right to use the "RELIANCE" Trademark.  Cozad did not have and does not have any relationship to Reliance Trailer Mfg.  The dispute that Cozad finds it in is one with Sterling Savings arising from their transaction that took place in Spokane, Washington.

DECLARATION OF JOSEPH MAYO
IN SUPPORT OF MOTION ... - 4

Case 2:10-cv-00111-EFS · Document 25-2 · Filed 07/26/10

Case 2:10-cv-00111-EFS    Document 13-1    Filed 06/04/10
Case 1:10-cv-00668-AWI-GSA    Document 38    Filed 06/01/2010    Page 5 of 37

1    12.    Mr. Pistachio's statement in paragraph 10 to his Declaration regarding

2   Mr. Brian Ling's attestation to the truth and accuracy of the bankruptcy schedules

3   related to Reliance Trailer Co., LLC is not relevant.  Brian Ling was simply mistaken

4   
5   regarding the rights Reliance Trailer Co., LLC might have in the "RELIANCE"

6   trademark.

7    13.    Pacific Coast Trailers made several offers to purchase Reliance Trailer

8   Co. LLC assets from Sterling but ceased doing so when it reached an agreement with

9   
10   Cozad regarding a subsequent transfer of substantially all of the assets from Cozad to

11   Pacific Coast Trailers, such agreement now being the subject of a separate lawsuit.

12    14.    Through a subpoena in the Washington action, Pacific Coast has

13   
14   obtained documents relating to the Cozad/Sterling Transaction.  These documents

15   confirm that Sterling made it clear to Cozad that Sterling may not have acquired the

16   "RELIANCE" Trademark.  Attached as **Exhibit A** is a true and correct copy of

17   
18   emails between Jason Delp, Tom Pistacchio and Robert Davis dated March 8, 2010.

19   In addition, in at least two face-to-face conversations with my fellow member of

20   Pacific Coast Trailers, James P. Kenney III, Mr. Pistacchio expressed concerns that

21   Reliance Trailer Co., LLC did not have any rights to the "RELIANCE" trademark

22   
23   and that he was believed the trademark was actually owned by a different entity.

24   
25

DECLARATION OF JOSEPH MAYO
IN SUPPORT OF MOTION ... - 5

15.    Pacific Coast Trailers is a Washington Limited Liability Company formed in Washington on January 23, 2008.  Pacific Coast's principal offices are located in Spokane, Washington.  Pacific Coast Trailers is not licensed in the State of California and has not conducted business in the State of California.  Pacific Coast Trailers does not have any offices, agents or employees in California.  Pacific Coast Trailers is a Washington based Company that has no connection to the State of California.  I am a resident of the State of Washington.

16.    Attached hereto as **Exhibit B** is a true and correct copy of an email from Jason Delp to Tom Pistacchio dated March 9, 2010.

17.    Attached hereto as **Exhibit C** are true and correct copies of emails between Jason Delp and Robert Davis, CPA dated March 12, 2010.

18.    Attached hereto as **Exhibit D** is a true and correct copy of an email from Brian Krikorian to Jason Delp dated March 18, 2010.

19.    Attached hereto as **Exhibit E** are true and correct copies of emails between Duane Swinton, Jason Delp and Brian Krikorian dated April 1, 2010.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 27TH day of May, 2010, at Spokane, Washington.

JOSEPH MAYO

DECLARATION OF JOSEPH MAYO
IN SUPPORT OF MOTION ... - 6

**Dunn & Black**
A Professional Service Corp.

111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

41

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of June, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of such filings to the following:

- **Sherrie M. Flynn**

  sherrie.flynn@fortneylaw.com

s/ WESLEY D. MORTENSEN
WESLEY D. MORTENSEN
Attorneys for Plaintiff
Dunn & Black, P.S.
111 N. Post, Ste. 300
Spokane, WA 99201
Telephone: (509) 455-8711
Fax:       (509) 455-8734
Email: wmortensen@dunnandblack.com

DECLARATION OF JOSEPH MAYO
IN SUPPORT OF MOTION ... - 7

## Jessica Wynecoop

**From:** Jason Delp
**Sent:** Monday, March 08, 2010 9:59 AM
**To:** 'Tom Pistacchio'
**Subject:** RE: Reliance

I left a message that I would call you back after my next meeting, probably around 11:30.

The financials I sent you are internally prepared by Reliance, no footnotes. Getting access to the accountant prepared statements will take time(time we don't have) as our files are with 3rd parties.

Thanks! - Jason

---

**From:** Tom Pistacchio [mailto:tom@cozad.net]
**Sent:** Monday, March 08, 2010 9:02 AM
**To:** Jason Delp
**Subject:** FW: Reliance

Jason:
Give me a call at your convenience, wanted to see if there
Is any footnotes on the financials to indicate relationships
Between companies for the intellectual properties.
Thanks

**Tom G. Pistacchio**
**Cozad Trailers**
**www.cozadtrailers.com**



Our highest commitment to Exceptional Quality workmanship and Customer
Service makes Cozad Trailers **"the FINAL WORD in heavy haul"**

---

**From:** ROBERT DAVIS [mailto:rdaviscpa@hotmail.com]
**Sent:** Friday, March 05, 2010 6:35 PM
**To:** Tom Pistacchio
**Subject:** RE: Reliance

One concern, which can be addressed in the agreement with Sterling.

**Peterbilt Brand Truck Dealership in California**
*In re Redwood Reliance Sales Company* (Bankr. N.D. Cal.) Case no. 09-11070

- Redwood Reliance Sales Company recently filed for Chapter 11 bankruptcy, and, although no sale has been announced, the Debtor's assets may be available for acquisition under the right circumstances. The Debtor operates a Peterbilt brand truck dealership, provides services and parts to trucks and truck operators. The Debtor currently has approximately 45

5/19/2010



STERLING 00299

43

employees and operates its business at 7011 Redwood Drive, Cotati, California. The Debtor's personal property includes: 22 vehicles valued at $68,493; office equipment and furnishings valued at $44,450; machinery and equipment valued at $48,557; inventory of parts valued at 1,625,900; and truck/trailer inventory valued at $7,751,941. The Debtor's income for 2007 was $55,089,880; for 2008 it was $32,371,166; and for 2009 to date it was $4,719,693.

**Seller and Manufacturer of Reliance Brand Trailers**
*In re Reliance Trailer Company, LLC* (Bankr. N.D. Cal.) Case no. 09-11071

▪ Reliance Trailer Company, LLC recently filed for Chapter 11 bankruptcy, and, although no sale has been announced, the Debtor's assets may be available for acquisition under the right circumstances. The Debtor manufactures and sells Reliance Brand trailers, and operates a truck and trailer maintenance and service department. The Debtor's manufacturing facility is located in Spokane, Washington, though its headquarters is located in Cotati, California. The Debtor's personal property includes: accounts receivable worth $828,679; four trademarks with an unknown value; vehicles valued at $72,734; office equipment and furnishings valued at $63,614; machinery, fixtures and equipment valued at $ 592,525; and total inventory valued at $3,986,353. The Debtor's gross sales for 2007 were $37,297,887; for 2008 they were $14,517,012; and for 2009 to date they were $2,234,603.

The bankruptcy filing lists LLC as the holder of the four trademarks.  The Patent office states that the Reliance trademarks were assigned.  So I am assuming that Reliance Trailer Manufacturing Inc of California assigned their interest in the Trademark to Reliance Trailer Co, LLC.  My concern is we have a liability on the books of LLC to Inc in the amount of $712K.  In addition, LLC has been paying Inc Royalties on this Trademark.  I would further surmise that the trademarks were assets of LLC and that if Inc took back a note on the assets that its lien was inferior to the bank's UCC1.

I am concerned that the encumbrance requirement for remitting the commission/royalty may exist and attach to this asset.  The bankruptcy hearing for Inc is on Tuesday March 9th, maybe you'll hear more by then.  We can add a indemnification clause to the bank's aggrement which states that we are receiving the assets Free and Clear of any and all encumbraces, rights, liens, licenses agreements, etc.. and have them indemnify you for any liabilities or restrictions which may arise.  Then add a liquidated damages clause.

*Robert Davis*

**Robert A. Davis CPA, Inc.**
**7475 N. First Street, Suite 102**
**Fresno, CA 93720**
**(559) 436-4894**
**(559) 446-1555 (fax)**

This notice is required by IRS Circular 230, which regulates written communications about federal tax matters between tax advisors and their clients. To the extent the preceding correspondence and/or any attachment is a written tax advice communication, it is not a full "covered opinion". Accordingly, this advice is not intended and cannot be used for the purpose of avoiding penalties that may be imposed by the IRS.

CONFIDENTIALITY NOTICE - This e-mail message is for the sole use of intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure,

distribution, or copying is prohibited. If you are not the intended recipient, please reply to the sender of this mail and destroy/delete all copies of this e-mail message.

---

**Subject:** FW: Reliance
**Date:** Fri, 5 Mar 2010 16:40:05 -0800
**From:** tom@cozad.net
**To:** rdaviscpa@hotmail.com

**Tom G. Pistacchio**
**Cozad Trailers**
**www.cozadtrailers.com**



Our highest commitment to Exceptional Quality workmanship and Customer Service makes Cozad Trailers **"the FINAL WORD in heavy haul"**

---

**From:** Jason Delp [mailto:Jason.Delp@sterlingsavings.com]
**Sent:** Friday, March 05, 2010 4:04 PM
**To:** Tom Pistacchio
**Subject:** Reliance

Tom·

Attached is the requested information.  Let me know if you have any questions.

Talk to you soon!

Jason
Sterling Savings Bank
509-227-0932

CONFIDENTIALITY NOTICE: This electronic mail transmission may contain legally privileged, confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking any action based on the contents of this electronic mail is strictly prohibited. If you have received this electronic mail in error, please contact sender and delete all copies.

5/19/2010

STERLING 00301

45

## Jessica Wynecoop

| | |
|---|---|
| **From:** | Jason Delp |
| **Sent:** | Tuesday, March 09, 2010 1:15 PM |
| **To:** | 'Tom Pistacchio' |
| **Subject:** | Reliance - Sale paperwork & funding instructions |
| **Attachments:** | Bill of Sale Reliance 2010 FINAL.docx; Execution Agreement Reliance 2010 FINAL.docx |

Tom-

Attached is the final Bill of Sale and Execution Agreement for the assets of Reliance.

Wiring instructions are listed below.

**Payment by Wire:**
Sterling Savings Bank
111 N Wall St
Spokane, WA 99201
Routing Number: 325171740
Account Number: 180010911919
Reference: Reliance Sale Attn Jason Delp

Please review, sign and fax or email back. Also please let me know when you will have the funds wired to finalize the transaction.

Let me know if you have any questions.

Thank You!

Jason
Sterling Savings Bank
Ph: 509-227-0932
Fax: 509-363-8176



EXHIBIT

B

5/19/2010

STERLING 00295

46

## BILL OF SALE

STERLING SAVINGS BANK (hereinafter "Seller"), for and in consideration of payment to it of the sum of Three Hundred Fifty Thousand Dollars ($350,000), hereby bargains, sells and conveys to COZAD TRAILERS (hereinafter "Buyer") all of Seller's right, title and interest in the personal property that is generally described on Exhibit "A" attached hereto.

Exhibit "A" is attached for illustrative purposes only, and Seller does not warrant that each of the items of inventory, manufacturing parts and manufacturing equipment listed on Exhibit "A" will be physically transferred to Buyer. Buyer has had the opportunity to inventory and inspect the personal property being purchased, acknowledges that some of the items described in Exhibit "A" may not be available for transfer to Buyer, and accepts title to the personal property "as is" and without warranties of any kind from Seller.

In addition to the items described in Exhibit "A," Seller also bargains, sells and conveys to Buyer, without warranties of any kind, all of Seller's right, title and interest, if any, in (1) the trade names "Reliance Trailer," "Sturdy Weld," "Alloy Trailers," and "Comet Trailers" and the word mark "Sturdy Weld"; and in (2) blueprints and engineering drawings of the former Reliance Trailer.

Pursuant to that certain Agreement dated March ____, 2010, as part of the purchase and sale, Buyer agrees to remove all personal property purchased from its current location at 3025 S. Geiger Blvd., Spokane, WA, no later than March 31, 2010.

The sales price shall be allocated as follows:

**SELLER:**

STERLING SAVINGS BANK

By:_____
Its:_____

**BUYER:**

_____

By:_____
Its:_____

# AGREEMENT

This Agreement is made this ____ day of March, 2010, by and between Sterling Savings Bank (hereinafter "Seller") and Cozad Trailers (hereinafter "Buyer").

## RECITALS

WHEREAS, Seller has agreed to transfer all of its right, title and interest, if any, in certain personal property (the "Purchased Property") located at 3025 S. Geiger Blvd., Spokane, WA (the "Location"), to Buyer; and

WHEREAS, pursuant to the Bill of Sale concerning transfer of title, Buyer has agreed to remove the Purchased Property and certain other personal property from the Location.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

## AGREEMENT

1.    <u>Removal of Property</u>.  Buyer agrees to remove the Purchased Property and all other personal property (cumulatively, the "Removed Property") from the Location no later than March 31, 2010, with the exception of those items that are specifically identified on Exhibit "A" attached hereto, or as otherwise instructed by Seller.

2.    <u>Indemnity and Insurance</u>.  Buyer hereby agrees to indemnify and hold harmless Seller from any and all claims, demands, or causes of action asserted by any third party arising out of removal of the Removed Property from the Location, including, but not limited to, any attorney fees or costs incurred by Seller in defending the same.  Buyer shall keep in force commercial general liability insurance, including bodily injury and property damage, covering its removal of the Removed Property from the Location with limits of not less than a combined single limit of $1 million.

3.    <u>Inspection of the Property and Location</u>.  Prior to Buyer's removal of the Removed Property from the Location, Seller and Buyer shall jointly inspect the Location, and Seller shall photograph the Removed Property located thereon.  Buyer agrees that it shall be responsible for repair of any damage to the Location caused by its removal of the Removed Property and that it shall hold harmless and indemnify Seller for any claims or demands for damages by the owners or lessors of the Location concerning damage to the Location resulting from removal of the Removed Property.

4.    <u>Non-Removal of Fixtures</u>.  Buyer agrees that it shall not remove any fixtures or other types of equipment or materials that are permanently affixed to any buildings at the Location.

S0105875; 1

1

5.     <u>Repair of Location</u>.  Upon notification by Seller of damage to the Location caused by removal of the Removed Property, Buyer shall undertake immediate repair of the same.

6.     <u>Liquidated Damages</u>.  For every day past March 31, 2010 that the Removed Property has not been removed from the Location, Buyer agrees to pay Seller the sum of $1,000 per day as liquidated damages for non-removal of the same.  Buyer and Seller agree that establishing the precise amount of damage or injury to Seller for such non-removal cannot be readily ascertained and agree that the sum of $1,000 per day is a reasonable estimate concerning the same.

7.     <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding between the parties and may be modified only by written document executed by both parties.

8.     <u>Applicable Law</u>.  This Agreement shall be construed under the laws of the State of Washington.

**SELLER:**

STERLING SAVINGS BANK

By:_____
Its:_____

**BUYER:**

_____

By:_____
Its:_____

STERLING 00298

49

## Jessica Wynecoop

| | |
|---|---|
| **From:** | Jason Delp |
| **Sent:** | Friday, March 12, 2010 1:51 PM |
| **To:** | 'ROBERT DAVIS' |
| **Subject:** | RE: Reliance Agreement & Attachments |
| **Attachments:** | SCAN6481_000.pdf |

Robert,

Attached is the signed copy of the Purchase Agreement and Bill of Sale. I am extremely sorry I didn't get this to you prior to the 1:30 deadline. Below is an items I need completed as part of the sale:
- Will you please forward a copy of the Proof of Insurance?

Were you planning on sending the actual contract for signature?

I truly appreciate all of your work and help with this!!

Jason

---

**From:** ROBERT DAVIS [mailto:rdaviscpa@hotmail.com]
**Sent:** Friday, March 12, 2010 12:08 PM
**To:** Jason Delp
**Subject:** RE: Reliance Agreement & Attachments

See Attached Purchase Agreement and Exhibits along with the Bill of Sale.

*Robert Davis*

**Robert A. Davis CPA, Inc.**
**7475 N. First Street, Suite 102**
**Fresno, CA 93720**
**(559) 436-4894**
**(559) 446-1555 (fax)**

This notice is required by IRS Circular 230, which regulates written communications about federal tax matters between tax advisors and their clients. To the extent the preceding correspondence and/or any attachment is a written tax advice communication, it is not a full "covered opinion". Accordingly, this advice is not intended and cannot be used for the purpose of avoiding penalties that may be imposed by the IRS.

CONFIDENTIALITY NOTICE - This e-mail message is for the sole use of intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, distribution, or copying is prohibited. If you are not the intended recipient, please reply to the sender of this mail and destroy/delete all copies of this e-mail message.

---

From: Jason.Delp@sterlingsavings.com
To: rdaviscpa@hotmail.com
Date: Thu, 11 Mar 2010 09:50:34 -0800



EXHIBIT

C

5/19/2010

STERLING 00232

50

Subject: Reliance Agreement & Attachments

Good Morning, again!

Attached is the Agreement and necessary attachments, for your review.

Please let me know if there are any questions.

Thank You!

Jason
Sterling Savings Bank
509-227-0932

CONFIDENTIALITY NOTICE: This electronic mail transmission may contain legally privileged, confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking any action based on the contents of this electronic mail is strictly prohibited. If you have received this electronic mail in error, please contact sender and delete all copies.

STERLING 00233

SI

Case 2:10-cv-00111-EFS   Document 25-2   Filed 07/26/10

# PURCHASE AGREEMENT

This Agreement is made this _12_ day of March, 2010, by and between Sterling Savings Bank a Washington Corporation (hereinafter "Seller") and Cozad Trailers Sales, LLC, a California Limited Liability Company (hereinafter "Buyer").

## RECITALS

WHEREAS, Seller has agreed to transfer all of its right, title and interest, in certain personal property (the "Purchased Property") located at 3025 S. Geiger Blvd., Spokane, WA (the "Location"), to Buyer; and

WHEREAS, pursuant to the Bill of Sale concerning transfer of title, Buyer has agreed to remove the Purchased Property and certain other personal property from the Location.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

## AGREEMENT

## SECTION 1. ASSETS PURCHASED; LIABILITIES ASSUMED

**1.1    Assets Purchased.**  The Seller agrees to sell to the Buyer and the Buyer agrees to purchase from the Seller, on the terms and conditions set forth in this Agreement, the following assets ("Purchased Assets"), 'as-is' 'where-is':

Any attached Exhibit is for illustrative purposes only, and Seller does not warrant that each of the items of inventory, parts and equipment listed on Exhibit(s) will be physically transferred to Buyer. Buyer has had the opportunity to inventory and inspect the personal property being purchased, acknowledges that some of the items described in the Exhibit(s) may not be available for transfer to Buyer, and accepts title to the personal property "as is" and without warranties of any kind from Seller.

(a)    All machinery, equipment, tools, furniture, fixtures, and vehicles listed on attached Exhibit A, which along with this purchase agreement shall be made a part of the Bill of Sale;

(b)    All inventories of supplies, new and used parts, and used trucks and trailers, in any state of manufacture and/or work in process, owned by the Seller;

(c)    The Seller's interest in all the names and goodwill received from its Reliance Trailer Company, LLC and related parties of the Debtor ("the Debtor");

(d)    All patents, trademarks, trade names, copyrights, service marks, and domain names and web sites of the Seller received from its Reliance Trailer Company, LLC and related parties of the , all registrations for them, all applications pending for them, and all other proprietary rights and intangible property of the Seller, including trade secrets, inventions, technology, software, operating systems,

S0105875, 1                                                1

STERLING 00234

52

customer lists, customer relationships, customer agreements, customer understandings, drawings, blueprints, know-how, formulae, slogans, processes and operating rights, and all other similar items and all such items acquired by the Seller from the ;

(e) All correspondence, engineering, environmental, plant records, and other similar documents and records received/seized from ;

(f) All rights to all telephone lines and numbers used in the conduct of the Business including, without limitation, those received/seized from ;

(g) All Service Work in Process;

(h) To the extent transferable, all approvals, authorizations, consents, licenses, permits, franchises, tariffs, orders, and other registrations of any federal, state, or local court or other governmental department, commission, board, bureau, agency, or instrumentality held by the Seller and required or appropriate for the conduct of the Business;

   **1.2   Liabilities Assumed.** Except for the liabilities and obligations to be assumed by the Buyer under Section 1.2, the Buyer will not assume and will not be liable for any liabilities of the Seller and its Debtor, known or unknown, contingent or absolute, accrued or other, and the Purchased Assets will be free of all liabilities, obligations, liens, and encumbrances. Without limiting the generality of the foregoing and except as otherwise provided above, the Buyer will not be responsible for any of the following

(a) Liabilities, obligations, or debts of the Seller and its Debtor, whether fixed, contingent, or mixed and whether based on events occurring before or after the Closing including, without limitation, those based on tort, contract, statutory, or other claims or involving fines or penalties payable to any governmental authority;

(b) Liabilities, obligations, or debts of the Seller and its Debtor for any federal, state, or local tax including, without limitation, federal income taxes, state income and excise taxes, state and local real and personal property taxes, and federal, state, and local withholding and payroll taxes;

(c) Liabilities or obligations of the Seller and its Debtor to employees for salaries, bonuses, or health and welfare benefits or with respect to any profit-sharing, stock bonus, pension, retirement, stock purchase, option, bonus, or deferred compensation plan or for any other benefits or compensation (including, without limitation, accrued vacation);

(d) Liabilities or obligations of the Seller and its Debtor for employee severance payments or arrangements resulting from termination of the Debtor's employees;

(e) Liabilities or obligations of the Seller and its Debtor relating to issuances of securities;

(f) Liabilities or obligations of the Seller and its Debtor incurred in connection with distributions to shareholders or any corporate dissolution;

(g) Liabilities or obligations of the Seller and its Debtor under any environmental law; and

(h) Liabilities for any billings in excess of revenue earned by the Seller and its Debtor.

STERLING 00235

*53*

## SECTION 2. PURCHASE PRICE

**2.1** The Purchase Price shall be $350,000 in US Dollars. The Purchase Price shall be allocated to the assets based on the following Purchase Price Allocation;

| (a) | Inventory | $150,000 |
| --- | --- | --- |
| (b) | Fixed Assets | 150,000 |
| (c) | Intangible assets | 50,000 |

**2.2** Removal of Property. Buyer agrees to remove the Purchased Property and all other personal property (cumulatively, the "Purchased Property") from the Location no later than March 31, 2010, with the exception of those items that are specifically identified on Exhibit "B" attached hereto, or as otherwise instructed by Seller.

## SECTION 3.     SELLER'S REPRESENTATIONS AND WARRANTIES – GENERAL

**3.1     Corporate Existence.** Seller is a corporation duly incorporated and legally existing under the laws of the state of Washington and is qualified to do business in every jurisdiction in which its conduct of business requires it to qualify.

**3.2     Authorization.** The execution, delivery, and performance of this Agreement and all other agreements contemplated by this Agreement to which the Seller are a party have been duly authorized by the Seller. This Agreement and the Related Agreements, when executed and delivered by the parties thereto, will constitute the legal, valid, and binding obligation of the Seller, as the case may be, enforceable against the Seller, as the case may be, in accordance with their respective terms, except as the enforceability thereof may be limited by the application of bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or judicial limits on the right of specific performance. The execution and delivery by the Seller of this Agreement and the Related Agreements to which the Seller is a party, and the fulfillment of and compliance with the respective terms hereof and thereof by the Seller, do not and will not (a) conflict with or result in a breach of the terms, conditions, or provisions of, or constitute a default under, any Contract; (b) result in the creation of any lien, security interest, charge, or encumbrance on the Purchased Assets; (c) result in a violation of the charter, bylaws, or operating agreements of the Seller or any law, statute, rule, or regulation to which the Seller are subject; or (d) require any authorization, consent, approval, exemption, or other action by or notice to any court or administrative or governmental body.

**3.3     Brokers and Finders.** The Seller has not employed any broker or finder in connection with the transactions contemplated by this Agreement, or taken action that would give rise to a valid claim against any party for a brokerage commission, finder's fee, or other like payment.

**3.4     Transfer Not Subject to Encumbrances or Third-Party Approval.** The execution and delivery of this Agreement and the Related Agreements by the Seller and the consummation of the contemplated transactions will not result in the creation or imposition of

STERLING 00236

54

any valid lien, charge, or encumbrance on any of the assets, and will not require the authorization, consent, or approval of any third party, including any governmental subdivision or regulatory agency.

3.5    To the best of Seller's knowledge there are no contracts in effect which limits the freedom of the Seller and its to compete in any line of business or with any person as contemplated in the manufacture and sale of the "Reliance" Reliance Heavy Duty Trailer", "Sturdy-Weld", "Comet" and "Alloy Trailer Name".

3.6    There is no pending or threatened preceding not already disclosed and listed on Schedule "C" that would interfere with the quiet enjoyment of any leasehold of which the Seller is the lessee. All other parties to the Contracts have consented or, before the Closing, will have consented (when such consent is necessary) to the consummation of the transaction contemplated by this Agreement without requiring modification of the Seller's rights or obligations under any Contract.

3.7    **Litigation.** Except as shown in Schedule "C", there are no actions, suits, proceedings, orders, investigations, or claims pending or, to the best of the Seller's and the Seller's knowledge, threatened against the Seller or its property, at law or in equity, or before or by any governmental department, commission, board, bureau, agency, or instrumentality; the Seller is not subject to any arbitration proceedings under collective bargaining agreements or otherwise or, to the best of the Seller's knowledge, there is no basis for any of the foregoing.

3.8    **Compliance with Laws.** To the best of the Seller's knowledge, (a) the Seller has at all relevant times conducted its business in compliance with its articles of incorporation and bylaws, and other organizational documents and in compliance with all applicable laws and regulations, and (b) the Seller is not in violation of any applicable laws or regulations, other than violations that singly or in the aggregate do not and, with the passage of time, will not have a Material Adverse Effect. The Seller is not subject to any outstanding order, writ, injunction, or decree, and the Seller has not been charged with, or threatened with a charge or a violation of any provision of federal, state, or local law or regulation. "Material Adverse Effect" as used in this Agreement shall mean an effect that is materially adverse, or would reasonably be expected to be materially adverse, to the value of all or any part of the Purchased Assets or that is materially adverse, or would be expected to be materially adverse, to the Business, properties, condition (financial or otherwise) or results of operation.

3.9    **Title to and Condition of Purchased Assets.**
The Seller owns, and at Closing the Buyer will acquire, all the Purchased Assets free and clear of all mortgages, pledges, security interests, options, claims, charges, or other encumbrances or restrictions of any kind, except for liens for taxes not yet due or being contested in good faith or except as will be paid from the proceeds of Closing.

3.10    The Seller has, and at Closing the Buyer will acquire, good and marketable title to the Purchased Assets

STERLING 00237

## SECTION 4.    SELLER'S REPRESENTATIONS AND WARRANTIES – LIABILITIES

4.1    **Undisclosed Liabilities.** To the Seller's knowledge, the Seller does not have any liability or obligation pertaining to the Purchased Assets (whether absolute, accrued, contingent, or other, and whether due or to become due) that is not accrued, reserved against, or disclosed in Schedule "D".

## SECTION 5.    SELLER'S    REPRESENTATIONS    AND    WARRANTIES    – ENVIRONMENTAL CONDITIONS

5.1    **Definitions.** As used in this Agreement,

(a)    "Environmental Law" means any federal, state, or local statute, ordinance, or regulation pertaining to the protection of human health or the environment and any applicable orders, judgments, decrees, permits, licenses, or other authorizations or mandates under such statutes, ordinances, or regulations; and

(b)    "Hazardous Substance" means any hazardous, toxic, radioactive, or infectious substance, material, or waste as defined, listed, or regulated under any Environmental Law.

5.2    **Hazardous Substances.**

(a)    To the best of Seller's knowledge and based on a Phase 1 Environmental review Seller commissioned and has received, no Hazardous Substance currently resides in, on or under the real property, including in the soil or surface water and groundwater, on which the Purchased Assets are located at the time of sale to Buyer.

(b)    To the best of Seller's knowledge none of the Purchased Assets have incorporated into them any asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls (in electrical equipment or otherwise), lead-based paint, or any other Hazardous Substance that is prohibited, restricted, or regulated when present in buildings, structures, fixtures, or equipment;

## SECTION 6.  REPRESENTATIONS OF BUYER

The Buyer represents and warrants to the Seller as follows:

6.1    **Corporate Existence.** The Buyer is a Limited Liability Company duly organized and legally existing under the laws of the state of California. The Buyer has all requisite corporate and/or individual power and authority to enter into this Agreement and the Related Agreements and to perform its obligations under them.

6.2    **Authorization.** The execution, delivery, and performance of this Agreement and the Related Agreements will have been duly authorized and approved by the Members of the Buyer at the time of Closing. This Agreement and the Related Agreements constitute valid and binding agreements of the Buyer, enforceable in accordance with its terms, except as

STERLING 00238

56

enforceability may be limited by bankruptcy, reorganization, insolvency, or similar laws affecting the enforcement of creditors' rights or by the application of general principles of equity.

**6.3 Brokers and Finders.** The Buyer has not employed any broker or finder in connection with the transactions contemplated by this Agreement and has taken no action that would give rise to a valid claim against any party for a brokerage commission, finder's fee, or other like payment.

**6.4 No Conflict with Other Instruments or Agreements.** The execution, delivery, and performance by the Buyer of this Agreement and the Related Agreements will not result in a breach or violation of, or constitute a default under, the Buyer's Articles of Incorporation or Bylaws or any material agreement to which the Buyer is a party or by which the Buyer is bound.

**6.5 Governmental Authorities.** Buyer is not required to submit any notice, report, or other filing with any governmental or regulatory authority in connection with the execution and delivery by the Buyer of this Agreement and the Related Agreements and the consummation of the purchase, and no consent, approval, or authorization of any governmental or regulatory authority is required to be obtained by the Buyer in connection with the Buyer's execution, delivery, and performance of this Agreement and the Related Agreements and the consummation of the purchase of the Purchased Assets.

## SECTION 7. INDEMNIFICATION AND SURVIVAL

**7.1 Survival of Representations and Warranties.** All representations and warranties made in this Agreement will survive the Closing of this Agreement. The representations and warranties in this Agreement will terminate one year after the Closing Date, and such representations or warranties will thereafter be without force or effect, except for any claim with respect to which notice has been given to the potentially indemnifying party before such expiration date.

**7.2 Seller's Indemnification.** The Sellers jointly and severally hereby agree to indemnify, defend, and hold the Buyer, its successors, affiliates, officers, directors, agents, employees, and assigns (collectively, the "Buyer's Indemnified Persons") harmless from and against any and all claims, liabilities, obligations, costs, and expenses, including reasonable attorney fees (collectively, "Damages"), arising out of or related to:

(a) Any breach or inaccuracy of any representation or warranty of the Seller made in this Agreement or any Related Agreement;

(b) Any failure by the Seller to perform any agreement required to be performed by it pursuant to this Agreement or any Related Agreement; and

(c) Any liability or obligation of the Seller or arising out of or in connection with the ownership, use, condition, maintenance, or operation of the Seller's business or the Purchased Assets by the Seller on or before the Closing, in either case not expressly assumed by the Buyer in accordance with the terms of this Agreement.

STERLING 00239

**7.3    Buyer's Indemnification.** The Buyer agrees to defend, indemnify, and hold harmless the Seller from and against all Damages arising out of or related to:

(a)    Any breach or inaccuracy of any representation or warranty of the Buyer made in this Agreement or any Related Agreement;

(b)    Any failure by the Buyer to perform any covenant required to be performed by it pursuant to this Agreement or any Related Agreement; and

(c)    Any liability or obligation of the Seller to any third party expressly assumed by the Buyer in accordance with the terms of this Agreement.

(d)    Buyer shall keep in force commercial general liability insurance, including bodily injury and property damage, covering its removal of the Purchased Property from the Location with limits of not less than a combined single limit of $1 million.

(e)    Inspection of the Property and Location.   Prior to Buyer's removal of the Removed Property from the Location, Seller and Buyer shall jointly inspect the Location, and Seller shall photograph the Removed Property located thereon. Buyer agrees that it shall be responsible for repair of any damage to the Location caused by its removal of the Removed Property and that it shall hold harmless and indemnify Seller for any claims or demands for damages by the owners or lessors of the Location concerning damage to the Location resulting from removal of the Removed Property.

(f)    Non-Removal of Fixtures.  Buyer agrees that it shall not remove any fixtures or other types of equipment or materials that are permanently affixed to any buildings at the Location such that the fixtures using the definition of  Personal Property law under Common Law and the Laws of the State of Washington would be considered part of the Real Property.

(g)    Repair of Location.  Upon notification by Seller of damage to the Location caused by removal of the Removed Property, Buyer shall undertake immediate repair of the same.

(h)    Liquidated Damages.  For every day past March 31, 2010 that the Purchased Property has not been removed from the Location, Buyer agrees to pay Seller the sum of $1,000 per day as liquidated damages for non-removal of the same.  Buyer and Seller agree that establishing the precise amount of damage or injury to Seller for such non-removal cannot be readily ascertained and agree that the sum of $1,000 per day is a reasonable estimate for this indemnification concerning the same.

**7.4    Indemnification Procedure.  Third-Party Claims.**

(a)    Each indemnified party will, with reasonable promptness after obtaining knowledge thereof, provide the indemnifying party with written notice of all third-party actions, suits, proceedings, claims, demands, or assessments that may be subject to the indemnification provisions of this Section 7.4 (collectively, "Third-Party Claims"), including, in reasonable detail, the basis for the claim, the nature of Damages, and a good-faith estimate of the amount of Damages.

(b)    The indemnifying party will have 15 days after its receipt of the claim notice to notify the indemnified party in writing whether the indemnifying party agrees that the claim is subject to Section 7 and, if so, whether the indemnifying party elects

STERLING 00240

to undertake, conduct, and control, through counsel of its choosing (subject to the consent of the indemnified party, such consent not to be withheld unreasonably) and at its sole risk and expense, the good-faith settlement or defense of the Third-Party Claim.

(c) If within 15 days after its receipt of the claim notice, the indemnifying party notifies the indemnified party that it elects to undertake the good-faith settlement or defense of the Third-Party Claim, the indemnified party will reasonably cooperate with the indemnifying party in connection therewith, including, without limitation, by making available to the indemnifying party all relevant information material to the defense of the Third-Party Claim. The indemnified party will be entitled to participate in the settlement or defense of the Third-Party Claim through counsel chosen by the indemnified party, at its expense. If the proposed settlement would impose an obligation or duty on the indemnified party, the indemnified party will have the right to approve the settlement and, in that case, the settlement may not be undertaken without such approval. As long as the indemnifying party is contesting the Third-Party Claim in good faith and with reasonable diligence, the indemnified party will not pay or settle the Third-Party Claim. Notwithstanding the foregoing, the indemnified party will have the right to pay or settle any Third-Party Claim at any time, but in such event it waives any right to indemnification therefore by the indemnifying party.

(d) If the indemnifying party does not provide notice that it elects to undertake the good-faith settlement or defense of the Third-Party Claim, or if the indemnifying party fails to contest the Third-Party Claim or fails to undertake or approve settlement in good faith and with reasonable diligence the indemnified party will thereafter have the right to contest, settle, or compromise the Third-Party Claim at its exclusive discretion, at the risk and expense of the indemnifying party, and the indemnifying party will thereby waive any claim, defense, or argument that the indemnified party's defense or settlement of such Third-Party Claim is in any respect inadequate or unreasonable.

(e) A party's failure to give timely notice will not constitute a defense (in part or in whole) to any claim for indemnification by such party, except if and only to the extent that such failure results in any material prejudice to the indemnifying party.

**7.5 Claims Other than Third-Party Claims.**

(a) Each indemnified party will, with reasonable promptness, deliver to the indemnifying party written notice of all claims for indemnification under Section 7.5, other than Third-Party Claims, including in reasonable detail the basis for the claim, the nature of the Damages, and a good-faith estimate of the amount of the Damages.

(b) The indemnifying party will have 30 days after its receipt of the claim notice to notify the indemnified party in writing regarding whether the indemnifying party accepts or disputes liability for all or any part of the Damages described in the claim notice. If the indemnifying party does not so notify the indemnified party, the indemnifying party will be deemed to accept liability for all the Damages described in the claim notice.

8

STERLING 00241

(c)    A party's failure to give timely notice will not constitute a defense (in part or in whole) to any claim for indemnification by such party, except if and only to the extent that such failure results in any material prejudice to the indemnifying party.

7.6    **Rights Not Exclusive.** An indemnified party's rights to indemnification under Section 7 are in addition to and not in lieu of any other rights to which the indemnified party may be entitled at law or in equity.

## SECTION 8. MISCELLANEOUS PROVISIONS

8.1    **Taxes**

(a)    Buyer and Seller understand that Buyer is purchasing all assets on a "Sale for Resale" basis. As such, Seller is not required to collect sales tax on the Purchased Assets from Buyer.

(b)    Seller shall be liable for and shall pay all taxes (whether assessed or unassessed) applicable to the Business or the Purchased Assets attributable to periods (or portions thereof) ending on or prior to the Closing. Buyer shall be liable for and shall pay all such taxes attributable to periods (or portions thereof) ending after the Closing.

(c)    In the case of any real or personal property taxes with respect to the Purchased Assets which relate to periods both prior to and after the Closing, such taxes will be prorated between the Buyer and Seller based upon the number of days of the taxable period before and after the Closing.

(d)    Any tax (including, without limitation, a sales tax, use tax, or real property transfer) attributable to the sale or transfer of the Purchased Assets from Seller to Buyer shall be paid by Buyer in connection with Buyer filing its use tax return. Seller agrees to timely sign and deliver such certificates or forms as may be necessary or appropriate to establish an exemption from (or otherwise reduce) or make a report with respect to such taxes.

8.2    **Binding Effect.** This Agreement will be binding on and inure to the benefit of the parties and their respective heirs, personal representatives, successors, and assigns.

8.3    **Assignment.**    Neither this Agreement nor any of the rights, interests, or obligations under this Agreement may be assigned by any party without the prior written consent of the other parties.

8.4    **Notices.**    All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, sent by facsimile (with confirmation), mailed by certified mail, or delivered by an overnight delivery service (with confirmation) to the parties at the following addresses or facsimile numbers (or at such other address of facsimile number as a party may designate by like notice to the other parties):

9

STERLING 00242

**To Buyer:**

Cozad Trailer Sales, LLC
Attention: Tom Pistacchio
4907 E. Waterloo Road
Stockton, CA 95215-5215

Phone: (209) 931-3093
Fax: (209) 931-3000

**To Seller:**

Sterling Savings Bank
c/o Jason Delp
111 Wall St, Br# 919
Spokane, WA 99201

Phone: ( 509 ) 227-0932
Fax: (509) 363-8176

    **8.5**    **Amendments.**   This Agreement may be amended only by an instrument in writing executed by all the parties.

    **8.6**    **Press Releases and Public Announcements.**   No Party shall issue any press release or make any public announcement relating to the subject matter of this Agreement prior to the Closing without the prior written approval of the other Parties; provided, however, that any Party may make any public disclosure it believes in good faith is required by applicable law (in which case the disclosing Party will use its best efforts to advise the other Parties prior to making the disclosure).

    **8.7**    **Counterparts.**   This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement.

    **8.8**    **Further Assurances.**   Each party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as any other party may reasonably request, to carry out the intent and accomplish the purposes of this Agreement.

    **8.9**    **Time of Essence.**   Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

    **8.10**    **Waiver.** Any provision or condition of this Agreement may be waived at any time in writing by the party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

    **8.11**    **Governing Law.**   This Agreement will be governed by and construed in accordance with the laws of the state of Washington.

    **8.12**    **Attorney Fees.**   If any suit or action is instituted to interpret or enforce the provisions of this Agreement, to rescind this Agreement, or otherwise with respect to the subject matter of this Agreement, the party prevailing on an issue will be entitled to recover with respect

STERLING 00243

to such issue, in addition to costs, reasonable attorney fees incurred in the preparation, prosecution, or defense of such arbitration, suit, or action as determined by the arbitrator or trial court; and if any appeal is taken from such decision, reasonable attorney fees as determined on appeal.

## SECTION 9. ENTIRE AGREEMENT

This Agreement (including the documents and instruments referred to in this Agreement) constitutes the entire agreement and understanding of the parties with respect to the subject matter of this Agreement and supersedes all prior understandings and agreements, whether written or oral, among the parties with respect to such subject matter

SELLER:

STERLING SAVINGS BANK

By: _____
Its: AVP, Asset Recovery Team Leader

BUYER:

By: TOM PISTACCHIO
Its: MANAGING MEMBER

STERLING 00244

Reliance Trailer Asset Purchase Agreement

## Exhibit A

Referenced in Section 1.1 of the Purchase Agreement between Sterling Savings Bank (Seller) and Cozad Trailers (Buyer) for the sale and purchase of the assets of Reliance Trailer.

1) The list of assets this Exhibit references are as follows:

   a) **Reliance Parts List** – provided by Seller to Buyer on 2/16/2010 as a PDF document attached to an email sent to Tom Pistacchio(Buyer representative) from Jason Delp(Seller representative).

   b) **Reliance Manufacturing Materials List** - provided by Seller to Buyer on 2/16/2010 as a PDF document attached to an email sent to Tom Pistacchio(Buyer representative) from Jason Delp(Seller representative).

   c) **Fixed Asset List** - provided by Seller to Buyer on 2/16/2010 as a PDF document attached to an email sent to Tom Pistacchio(Buyer representative) from Jason Delp(Seller representative).

S0105875; 1

STERLING 00245

Reliance Trailer Asset Purchase Agreement

## EXHIBIT B

Those Item Specified as to Not be Removed:

Buildings and Real Property

13

STERLING 00246

Reliance Trailer Asset Purchase Agreement

## Exhibit C

Disclosure(s) for Sections 3.6 and 3.7 of the Purchase Agreement between Sterling Savings Bank (Seller) and Cozad Trailers (Buyer) for the sale and purchase of the assets of Reliance Trailer. To the best of Seller's knowledge below is the list of pending legal action(s) that the Seller is an involved party and that could have an effect on this transaction or the Buyer.

    (a) Pacific Coast Trailer LLC vs. Sterling Savings Bank, case no. 2010-02-00810-6, Superior Court of the State of Washington, County of Spokane, Complaint for Unlawful Detainer under RCW Ch. 59 16 and Trespass

14

STERLING 00247

Reliance Trailer Asset Purchase Agreement

**Exhibit D**

Listing of Liabilities Pertaining to the Purchased Assets

None

STERLING 00248

March 12, 2010

## BILL OF SALE

STERLING SAVINGS BANK (hereinafter "Seller"), for and in consideration of payment to it of the sum of $350,000.00 (Three Hundred Fifty Thousand), hereby bargains, sells and conveys to Cozad Trailer Sales, LLC (hereinafter "Buyer") all of Seller's right, title and interest in the personal property that is generally described on the Purchase Agreement Exhibit attached hereto.

The Purchase Agreement including Exhibit "A" is attached for illustrative purposes only, and Seller does not warrant that each of the items of inventory, manufacturing parts and manufacturing equipment listed on Purchase Agreement Exhibit "A" will be physically transferred to Buyer. Buyer has had the opportunity to inventory and inspect the personal property being purchased, acknowledges that some of the items described in the Purchase Agreement Exhibit "A" may not be available for transfer to Buyer, and accepts title to the personal property "as is" and without warranties of any kind from Seller.

In addition to the items described in Exhibit "A," Seller also bargains, sells and conveys to Buyer, without warranties of any kind, all of Seller's right, title and interest, if any, in (1) the trade names "Reliance Trailer," "Sturdy Weld," "Alloy Trailers," and "Comet Trailers" and the word mark "Sturdy Weld"; and in (2) blueprints and engineering drawings of the former Reliance Trailer.

Pursuant to that certain Agreement dated March 12, 2010, as part of the purchase and sale, Buyer agrees to remove all personal property purchased from its current location at 3025 S. Geiger Blvd., Spokane, WA, no later than March 31, 2010.

STERLING SAVINGS BANK

By: _Jason E. Delt_

Its: _AVP, Asset Recovery Team Leader_

S0105216; 1

STERLING 00249

# Jessica Wynecoop

| | |
|---|---|
| **From:** | Brian H. Krikorian [bhkrik@onlymyemail.com] |
| **Sent:** | Thursday, March 18, 2010 10:39 AM |
| **To:** | Jason Delp |
| **Cc:** | tomp@cozad.net; 'Delores Pistacchio'; kkardash@aol.com |
| **Subject:** | Sterling Savings v. Pacific Coast Trailers |

Dear Mr. Delp,

I am attorney in Seattle, and I have been retained by Tom and Delores Pistacchio and Cozad Trailers to deal with the various disputes that have arisen with Pacific Coast Trailers, etc. over the sale of the assets by Sterling. The client sent me an email from you that contained the complaint filed by the banks law firm, but the not the TRO the bank has in place. Would you mind emailing or faxing me a copy. If that is a problem, let me know – I can contact the Bank's attorney.

Sincerely,

Brian H. Krikorian
bhkrik@bhklaw.com

[x] cid:image001.png@01CA4CDD.8A548A00

*THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS IDENTIFIED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT PRIVILEGED AND CONFIDENTIAL COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS MESSAGE IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.*



EXHIBIT
D

STERLING 00196

## Jessica Wynecoop

| | |
|---|---|
| **From:** | Brian H. Krikorian [bhkrik@onlymyemail.com] |
| **Sent:** | Thursday, April 01, 2010 5:30 PM |
| **To:** | 'Duane M Swinton'; Jason Delp |
| **Subject:** | Trademark Issues |
| **Attachments:** | Letter to Jason Delp re Trademarks.pdf |

Jason and Duane,

On a completely separate issue, I am enclosing a letter regarding obtaining a transfer of any intangible property from Sterling.  As indicated in my letter, we would appreciate any documentation the bank may have regarding any "chain" of title or lien it had on the trademark based upon Pacific Coast's current Trademark claims.

Thank you,

Brian

Brian H. Krikorian
bhkrik@bhklaw.com

> **Brian H. Krikorian**
> Law Offices of Brian H. Krikorian
>
> (206) 547-1942 Work
> (425) 732-0115 Fax
> 2110 N Pacific St Ste 100
> Seattle, WA  98103
>
> P.O. Box 1238
> Issaquah, WA  98027

*THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS IDENTIFIED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT PRIVILEGED AND CONFIDENTIAL COMMUNICATION, AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS MESSAGE IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.*

---

**From:** Duane M Swinton [mailto:DMS@witherspoonkelley.com]
**Sent:** Thursday, April 01, 2010 3:33 PM
**To:** bhkrik@bhklaw.com
**Cc:** jason.delp@sterlingsavings.com
**Subject:** Re: Purchase Agreement

I am in receipt of your letter suggesting that Sterling Savings has some liability to Cozad Trailer because of the demands being asserted by Pacific Coast Trailer _____ nce the personal property purchased by

5/19/2010

**EXHIBIT**

**E**

STERLING 00144

Cozad from Sterling was not removed by the March 31 deadline. I've reviewed the pertinent documents and have advised Sterling that any claim in this regard is without merit. Nevertheless, it is my understanding that Sterling has agreed to participate in payment to Pacific Coast Trailer in the amount of $20,000. Sterling will agree to pay this amount only if both Cozad and Pacific Coast agree in writing that this $20,000 payment by Sterling is in complete satisfaction of any and all claims by either Cozad or Pacific Coast Trailer concerning the personal property in question and removal of the same from the real property on which it is located. At the same time Sterling agrees not to demand from Cozad the $1,000 to which it is entitled pursuant to the Purchase and Sale agreement. Sterling does not want to be placed in any position down the road to respond to further claims by either Cozad or Pacific Coast Trailer concerning this issue.

Duane Swinton
Witherspoon, Kelley, Davenport & Toole, P.S.
422 W. Riverside Ave., Ste. 1100
Spokane, WA 99201
(509) 624-5265

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, please be advised that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Notice: The information contained in this email and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return email, and delete the original message and all copies from your system. Thank you.

---

If this email is spam, report it here:
http://www.OnlyMyEmail.com/ReportSpam

5/19/2010

# Law Offices of Brian H. Krikorian

*Attorneys at Law*

Pacific Pointe Building
2110 N Pacific Street, Suite 100
Seattle, Washington 98103

BRIAN H. KRIKORIAN‡
bhkrik@bhklaw.com

(206) 547-1942
Fax:   (425) 732-0115

‡Admitted in California
and Washington

April 1, 2010

Jason Delp
AVP, Asset Recovery Team Leader
Sterling Savings Bank
111 N. Wall Street, Suite 203
Spokane, WA 99201

> Re:   Cozad Trailer Sales/Sterling Savings Bank

Dear Jason:

I am following up on behalf of Cozad Trailer Sales, LLC ("Cozad") regarding the Purchase and Sale Agreement, and delivery to Cozad of the intellectual property that was sold to Cozad by Sterling Savings Bank ("Sterling").

As you may know, Pacific Coast Trailers, LLC has filed a separate lawsuit against Cozad for trademark infringement. Pacific Coast contends that it has licensed the trademark "Reliance" from Reliance Trailer Manufacturing Company, and therefore Cozad is prohibited from using the "Reliance" mark. We are in the process of investigating the validity of this prior to taking the next step in that litigation. As part of the Reliance Bankruptcy, our investigation indicates that Reliance Trailer Company, LLC listed as personal property assets the Reliance Trademark, SturdyWeld Trademark, Alloy Trademark and Comet Trademark. According to Sterling's UCC-1 filed on January 26, 2007, it had a secured interest in "all Assets" of Reliance Trailer Co., LLC.

The purpose of my letter is two-fold. First we would appreciate if Sterling would provide us any and all documents, if any, which may evidence the exact intellectual property that Sterling had a right to as part of its loans to Reliance Trailer Company's loan obligations. Secondly, Cozad would request that Sterling take whatever legal steps are necessary to transfer access, title and/or possession to Cozad with regard to any intangible assets, including the trademarks listed in Schedule B of the Bankruptcy filings and/or the Sterling UCC-1.

Law Offices of Brian H. Krikorian
Page 2
April 1, 2010


I am sending a copy of this letter to Duane Swinton as a courtesy.  If you would like me to deal directly with Mr. Swinton please let me know.

Very truly yours,

BRIAN H. KRIKORIAN

BHK: tbm